UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

MONET DOWRICH,                                        **COMPLAINT**

                Plaintiff,                         05 Civ. 3307

   -against-                                              Judge  AKH

BLUE WOODS MANAGEMENT GROUP, INC.,          **Plaintiff Requests Trial by Jury**

                Defendant.
_____X

Plaintiff **MONET DOWRICH** alleges that:

## FIRST CLAIM
### (Sexual Harassment under Title VII)

1.  The jurisdiction of this Court is conferred because of the presence of:

    (a)    federal questions pursuant to 28 U.S.C. §§ 1331 and 1343 arising from claims based upon (first and second claims) Title VII of the Civil Rights Act of 1964 §§701 *et seq*., as amended 24 U.S.C.A. §2000e, *et seq.*; and

    (b)    the presence of a common nucleus of operative fact such that a single case or controversy is present for supplemental jurisdiction (third, fourth, fifth and sixth claims), pursuant to 28 U.S.C. §1367;

2.  The venue of this action is properly placed in the Southern District of New York pursuant to 28 U.S.C. 1391(c) because, upon information and belief, defendant Blue Woods Management Group, Inc. ("Blue Woods") is duly incorporated in New York or otherwise authorized  to do business in New York, with its principal place of business at 5701 Arlington Avenue, Riverdale, New York 10471, and the facts out of which the claims arose occurred in the Southern District of New York.

3.   Upon information and belief, Blue Woods is a real-estate property management firm with over fifteen employees.

4.   Upon information and belief, Blue Woods manages co-op, condominium, and rental housing facilities.

5.   Plaintiff Monet Dowrich (Dowrich) is a resident of Brooklyn, New York.

6.   From October 13, 2003 until March 31, 2004 (the "period of employment"), Blue Woods employed Dowrich as a real-estate property manager.

7.   During the period of employment, Dowrich managed approximately five co-op living facilities, and one rental living facility on behalf of Blue Woods.

8.   One of the buildings Dowrich managed on behalf of Blue Woods was a co-op facility located at 385 Argyle Road, Brooklyn, New York 11226, (the "Argyle Road co-op").

9.   The President of the Board of Directors for the Argyle Road co-op was Len Diaz ("Diaz")

10.  As property manager for the Argyle Road co-op, Dowrich worked closely with Diaz on co-op improvement projects and construction.

11.  In approximately the fall of 2003, Dowrich and Diaz worked together on a construction project that involved the plumbing at the Argyle Road co-op.

12.  In approximately early November 2003, Diaz asked Dowrich if she would like to "hang out" with him after work sometime.

13.  Dowrich declined Diaz's offer.

14.  In approximately mid-November 2003, Diaz approached Dowrich again, and asked Dowrich if she would like to join him for drinks after work.

15.   Dowrich declined again stating that she does not drink, and does not go out based on religious reasons.

16.   Within days, in late November 2003, Diaz called Dowrich's supervisor, the President of Blue Woods, Donald Wilson ("Wilson"), and alleged that Dowrich had not returned Diaz's phone calls, and that Dowrich was responsible for causing an unfavorable bid by a contractor for the construction project that involved the Argyle Road co-op plumbing.

17.   Wilson explained to Diaz that Dowrich could not be responsible for the unfavorable bid.

18.   After this telephone call, Dowrich informed Wilson that she had declined two sexual advancements from Diaz, and that she believed that these rejections were the reason for his complaints.

19.   After informing Wilson of Diaz's advances, Dowrich told Wilson that she no longer wished to work with Diaz at the Argyle Road co-op and asked that Wilson remove her as the property manager of the building.

20.   Wilson declined Dowrich's request stating that he didn't believe her claims, and that Diaz was not a physical threat to Dowrich.

21.   On December 15, 2003, the Board of Directors of the Argyle Road co-op, held a board meeting (the "December 2003 board meeting.")

22.   Previous to this meeting, Dowrich asked Wilson that board members be notified of Diaz's advancements toward Dowrich during the December 2003 board meeting.

23.   Wilson stated that he did not want to bring the issue up during the December 2003 board meeting.

24. No mention was made during the December 2003 board meeting of Diaz's advancements toward Dowrich.

25. Previously, the Treasurer of the Argyle Road co-op, Beavin Lawrence ("Lawrence") also had asked Dowrich out, Dowrich had declined, and she informed Wilson upon the same occasion that she informed Wilson of Diaz's advances.

26. In approximately early January 2004, Dowrich met with Wilson again.

27. During this meeting, Dowrich again requested to be removed from the Argyle Road co-op on the basis of Diaz's and Lawrence's advances.

28. Wilson denied Dowrich's second request to be removed as the property manager of the Argyle Road co-op.

29. On approximately January 8, 2004, Dowrich received a healthcare benefits card from Blue Woods's healthcare provider, United Healthcare.

30. At the time Dowrich received the United Healthcare benefits card on January 8, 2004, Dowrich was not covered by Blue Woods employee healthcare plan.

31. In approximately the last week of January 2004, Wilson told Dowrich that since she had been employed with Blue Woods for over three months that she would start receiving medical benefits through Blue Wood's healthcare provider, United Healthcare, effective February 1, 2004.

32. On February 4, 2004, and on February 11, 2004, Dowrich scheduled doctor's appointments.

33. Shortly after these medical visits, during a follow up visit, Dowrich was informed by her doctor's office that Blue Woods had cancelled her medical benefits and that the effective date

4

for her eligibility to receive benefits had been delayed until May 2004.

34.  Dowrich asked Wilson why her benefits had been cancelled.

35.  Wilson responded that United Healthcare would not allow him to add Dowrich to Blue Woods' benefits plan prior to six months after her date of hire, not three months as Wilson had previously told Dowrich.

36.  Dowrich contacted United Healthcare, and United Healthcare responded to Dowrich stating that they do not have the authority to make decisions regarding effective date of employee benefits.

37.  United Healthcare told Dowrich that Blue Woods has all rights regarding the effective date of an employee's healthcare benefits.

38.  In approximately February 2004, Mary Hack ("Hack"), a fellow property manager at Blue Woods, spoke to Wilson and offered to switch buildings with Dowrich because Hack had personal conflicts with the superintendent at a building that Blue Woods assigned her to manage.

39.  During the conversation, Hack spoke to Wilson about Dowrich's situation at the Argyle Road co-op.

40.  Wilson declined to switch Hack with Dowrich at the Argyle Road co-op, and both Hack and Dowrich remained assigned to their respective buildings.

41.  During approximately the second week in March 2004, Wilson told Dowrich that he had had a conversation with Kathy Fanning ("Fanning"), the President of the Board of Directors of the Pomander Walk co-op ("Pomander Walk"), another co-op managed by Dowrich.

42.  Wilson told Dowrich that the conversation between Wilson and Fanning occurred during approximately the last week in February 2004, (the "February 2004 conversation.")

5

43. Wilson told Dowrich that during the February 2004 conversation Fanning stated that she wasn't satisfied with Dowrich's management of the building.

44. Wilson also told Dowrich that as a result of the February 2004 conversation, Wilson and Fanning decided to remove Dowrich as the manager of the Pomander Walk co-op.

45. Wilson informed Dowrich of the February 2004 conversation and the decision to remove Dowrich as the property manager of the Pomander Walk co-op during approximately the second week in March 2004.

46. At approximately the same period of time, the middle of March 2004, Dowrich was also removed as property manager from another co-op she managed, the Pleasant Homes co-op.

47. Approximately two weeks later, on March 31, 2004, Wilson terminated Dowrich's employment with Blue Woods.

48. When Dowrich asked for an explanation for her termination, Wilson responded, "it just wasn't working out."

49. When Dowrich asked for an explanation for her removal from Pomander Walk and Pleasant Homes, Wilson responded, "They were just unsatisfied with you and I really don't feel like getting into it with you."

50. Previous to Dowrich's removal from Pomander Walk, the President of the Board of Directors for Pomander Walk, Kathy Fanning, expressed *via* email to Dowrich that she was pleased to have Dowrich as Pomander Walk's property manager.

51. After Dowrich's termination, in approximately June 2004, Dowrich had a conversation with Fanning in which they discussed the reasons Wilson had stated why Dowrich was removed as building manager from the Pomander Walk co-op.

6

52. Fanning told Dowrich that she was never dissatisfied with Dowrich's work, and that Wilson had told her the reason for Dowrich's removal was because Dowrich had told Wilson that she no longer wished to manage the Pomander Walk building, and that Dowrich had requested to be removed.

53. Dowrich had never made this statement to Wilson.

54. Also after Dowrich's termination, Dowrich spoke to Collette Simms ("Simms"), the closing agent for Blue Woods, about her issues with Diaz.

55. Simms told Dowrich that Diaz had also asked her out repeatedly since approximately November 2004.

56. After Simm's conversation with Dowrich, Simms notified Wilson of Diaz's behavior.

57. Wilson responded to Simms, "I didn't believe Monet when she made her allegations, but I think I might have made a mistake."

58. As a result of the events leading up to and after Dowrich's termination, Dowrich has continuously suffered from anxiety, insomnia, and loss of appetite, and has sought and received professional treatment.

59. Upon information and belief, Dowrich's salary at the time of her termination was $45,000.

60. Dowrich filed a charge with the Equal Employment Opportunity Commission, and received a notification of her right to sue on February 10, 2005.

61. As is set forth above, Blue Woods and its President engaged in sexual harassment, pursuant to Title VII of the Civil Rights Act of 1964 §§701 *et seq*., by terminating Dowrich after

she asked to be transferred to avoid the sexual advancements of Blue Woods' client, the

President of the Argyle Road co-op Len Diaz.

62.  By the reason of the foregoing, Dowrich is entitled to:

(a)     Compensatory damages for pain and suffering and back pay of approximately
        $250,000 plus at least $5,000 per month for every month subsequent to the date of
        this complaint; and

(b)     Reinstatement, or, in the alternative, front pay including loss of future earnings,
        and retirement benefits in the amount of approximately $200,000; and

(c)     Punitive damages in the amount of $100,000 or the maximum permitted by law;
        and

(d)     The costs of this action, including fees and costs of experts, together with interest
        and attorney's fees; and

(e)     Such other and further relief as this Court deems just and equitable.

## SECOND CLAIM
### (Retaliation under Title VII)

63.  Dowrich repeats and re-alleges each and every allegation of paragraphs 1 through 60.

64.  As is set forth above, Blue Woods and its President engaged in retaliation, pursuant

to Title VII of the Civil Rights Act of 1964 §§701 *et seq*., by terminating Dowrich after she asked

to be transferred to avoid the sexual advancements of Blue Woods' client, the President of the

Argyle Road co-op Len Diaz.

65.  By reason of the forgoing, Dowrich is entitled to the relief set forth in paragraph 62.

## THIRD CLAIM
### (Sexual Harassment under New York Human Rights Law)

66.  Dowrich repeats and re-alleges each and every allegation of paragraphs 1 through 60.

67.  As is set forth above, Blue Woods and its President engaged in sexual harassment,

pursuant to N.Y. Executive Law §290, *et seq*., by terminating Dowrich after she asked to be transferred to avoid the sexual advancements of Blue Woods' client, the President of the Argyle Road co-op Len Diaz.

68.  Supplemental jurisdiction is conferred pursuant to 28 U.S.C. §1367 to claims in violation of N.Y. Executive Law §290, *et seq*.

69.  Dowrich seeks monetary damages and equitable relief to redress the deprivation of rights accorded to her under N.Y. Executive Law §290, *et seq*.

70.  Prior to filing with the United States District Court for the Southern District of New York, this complaint has been served on the New York Commission on Human Rights and on the Corporation Counsel for New York City as required by N.Y. Code §8-502(c).

71.  By the reason of the forgoing, Dowrich is entitled to the relief set forth in paragraph 62.

## FOURTH CLAIM
### (Retaliation under New York Human Rights Law)

72.  Dowrich repeats and re-alleges each and every allegation of paragraphs 1 through 60.

73.  As is set forth above, Blue Woods and its President engaged in retaliation, pursuant to N.Y. Executive Law §290, *et seq*., by terminating Dowrich after she asked to be transferred to avoid the sexual advancements of Blue Woods' client, the President of the Argyle Road co-op Len Diaz.

74.  Supplemental jurisdiction is conferred pursuant to 28 U.S.C. §1367 to claims in violation of N.Y. Executive Law §290, *et seq*.

75.  Dowrich seeks monetary damages and equitable relief to redress the deprivation of

rights accorded to her under N.Y. Executive Law §290, *et seq*.

76.  Prior to filing with the United States District Court for the Southern District of New York, this complaint has been served on the New York Commission on Human Rights and on the Corporation Counsel for New York City as required by N.Y. Code §8-5029(c).

77.  By the reason of the forgoing, Dowrich is entitled to the relief set forth in paragraph 62.

## FIFTH CLAIM
### (Sexual Harassment under New York City Administrative Code)

78.  Dowrich repeats and re-alleges each and every allegation of paragraphs 1 through 60.

79.  As is set forth above, Blue Woods and its President engaged in sexual harassment, pursuant to N.Y.C. Administrative Code Title 8,  §8-107, *et seq*., by terminating Dowrich after she asked to be transferred to avoid the sexual advancements of Blue Woods' client, the President of the Argyle Road co-op Len Diaz.

80.  Supplemental jurisdiction is conferred pursuant to 28 U.S.C. §1367 to claims in violation of N.Y.C. Administrative Code Title 8,  §8-107, *et seq*.

81.  Dowrich seeks monetary damages and equitable relief to redress the deprivation of rights accorded to her under N.Y.C. Administrative Code Title 8,  §8-107, *et seq*.

82.  Prior to filing with the United States District Court for the Southern District of New York, this complaint has been served on the New York Commission on Human Rights and on the Corporation Counsel for New York City as required by N.Y. Code §8-502(c).

83.  By the reason of the forgoing, Dowrich is entitled to the relief set forth in paragraph 62.

## SIXTH CLAIM
### (Retaliation under New York City Administrative Code)

84.   Dowrich repeats and re-alleges each and every allegation of paragraphs 1 through 60.

85.   As is set forth above, Blue Woods and its President engaged in retaliation, pursuant to N.Y.C. Administrative Code Title 8,  §8-107, *et seq*., by terminating Dowrich after she asked to be transferred to avoid the sexual advancements of Blue Woods' client, the President of the Argyle Road co-op Len Diaz.

86.   Supplemental jurisdiction is conferred pursuant to 28 U.S.C. §1367 to claims in violation of N.Y.C. Administrative Code Title 8,  §8-107, *et seq*.

87.   Dowrich seeks monetary damages and equitable relief to redress the deprivation of rights accorded to her under N.Y.C. Administrative Code Title 8,  §8-107, *et seq*.

88.   Prior to filing with the United States District Court for the Southern District of New York, this complaint has been served on the New York Commission on Human Rights and on the Corporation Counsel for New York City as required by N.Y. Code §8-502(c).

89.   By the reason of the forgoing, Dowrich is entitled to the relief set forth in paragraph 62.

**Wherefore**, it is respectfully requested that this Court award the relief set forth in paragraph 62.

March 28, 2005

_____
**PETER G. EIKENBERRY** (PGE-7257)

11

Attorney for plaintiff Monet Dowrich
74 Trinity Place, Suite 1609
New York, New York 10006
(212) 385-1050